on behalf of Shane Jacob Woodcook and I'm here from the Federal Defenders of Montana and Great Falls. Thank you for having me for argument today. Your Honor, the first issue is whether Mr. Woodcook qualifies as another person and we certainly have a note to that effect and the government has graciously conceded that. The next question though is who would then qualify as another person? And there appears to exist a bit of a tension within the circuits on the few cases on this subject concerning United States v. Jimenez, Jr. for example on at 323 Federal 3rd at 323 which says that eluding law enforcement officers in and of itself creates a substantial risk of injury v. United States v. Smith at 210 Federal 3rd, 2000 that take a really qualitative approach to the issue of recklessness and of course the issue of a substantial risk to another person. In this case it was law enforcement officers. What about the passenger in the car? Your Honor, as this Court is aware, note 4 states that it is a person who willfully flees, a participant in the offense who willfully flees. And I would submit that if the Court is aware in the pre-sentence report specifically paragraphs 9 and 10, this girlfriend or significant other of Mr. Woodcook was a participant throughout the criminal conduct that started in Boise, Idaho with the purchase of the 97 Chevy through Great Falls and Haver on to Michigan. I guess my biggest difficulty with this is that the only apparent finding that the district judge made was a risk to Woodcook himself. And that doesn't cut it. Yes. So whether it could be passenger, whether it could be the police, whether it could be residents of the trailer park, I mean, we just don't know, right? Yes. Yes. And the government has graciously, I guess, conceded that issue as well, that it perhaps led the Court, you know, in its effort. I mean, the Court did try to make a finding that it was Mr. Woodcook. The Court then focused on Mr. Woodcook only and the reckless behavior of him only. Do you have any contention that the Court's finding that it was reckless as a predicate to then moving on to qualify whether it was reckless endangerment and those standards? But insofar as the Court did make a finding that it was reckless, do you dispute that? That is, yes, that is a good question. I would not dispute that Mr. Woodcook's conduct was a grade of recklessness. But if you compare Mr. Woodcook's case and his actions versus United States versus Jimenez, Thomas or Smith, where there was actual physical contact or at least residential neighborhoods were driven through, Mr. Woodcook went around the trailer park on a dirt road. Perhaps his reckless conduct was a bit less. I wasn't trying. I was just trying to decide whether our focus is on the finding of recklessness and whether then it was endangerment or, yes, it was reckless, but it didn't constitute a serious risk of death or injury to another. So that you move beyond the predicate. Yes. And I would concede that note four or note one, rather, of 2A1.4 of the guidelines, which defines recklessness, his conduct could be said as falling within the parameters of that. But then, of course, we have that other question of specific harm or potential harm to another person. Well, now, the passenger was never charged with anything, right? That is correct. And in fact, the accused in this case asserts that she had nothing to do with this. We don't have anything in the record to the contrary, do we? Well, this being which specific instance? Well, any of the crimes that he was charged with. The pre-sentence report focuses on her conduct in paragraphs nine and ten about how they were together when they bought the car. It talks about how they were together when they bought the four-wheeler and have her. But that's as far as it goes of putting her there. It doesn't – is there anything in here that would say she was a participant in any of the underlying crimes that, ostensibly, he was fleeing to avoid prosecution? The record really isn't very clear on that about whether she was – how much of a participant she was. And then it's my impression that we have no evidence as to the speeds that were attained in any of this. That is correct, Your Honor, yes. And we don't even have anybody characterizing it as high speed. The most we have is a characterization of increased speed. Is that all true now? Yes, sir. And then – and then – so we have no – the only – then the only incident in the attempt to allude, if that's the way it is to be characterized, is that he hit something. He hit some pile of dirt or something. A pile of dirt on the dirt road. Do we know what extent that occurred? No, sir. No, sir. Nothing? No, sir. Okay. That's the impressions I have, and you say that's all accurate? Yes, sir. Speaking for myself, at least, I think it would be helpful to hear from the – hear from the government. Yes, sir. I will just reserve the room for anything. Thank you. Good morning, ma'am. Please, the Court. My name is Carl Rosted, and I'm an assistant U.S. attorney in Great Falls. I want to start by thanking the Court for accommodating us and allowing us to appear by video. And secondly, I'd like to emphasize that, again, we do concede that it was my error, the government's error, that led Judge Haddon down this road as to the dangerousness to Mr. Woodcook himself. But having said that, Your Honors, there is an ample record here that distinguishes Mr. Woodcook's case from those cases cited by Mr. Arvanites where a high-speed or a higher-speed attempt to elude police did not constitute reckless endangerment. I think that the dividing line is the – whether there is a population in the area of the high-speed chase. Well, we don't even know that, Mr. Rosted. I mean, we know that he drove by a trailer park, and I suppose inferentially there were people in the trailer park. We don't know whether they were anywhere close to where he was driving by or even that he was driving by at a speed that, in fact, endangered them. I mean, I guess here, if I can sort of hone in on where I'm at, it may well be that the enhancement can be justified based upon something that could be presented, but the district judge made no findings that allow us to then review for clear error. Well, and that's also the case except for the fact that Judge Haddon repeatedly incorporated two paragraphs of the pre-sentence report. Well, sure, but they don't say anything specific either. I mean, they just indicate he drove by the – well, they don't even say he drove by, but that's a gloss that I mean, that's pretty much it, isn't it? And he hit the dirt. Well, he hit a dirt thing, which endangered the dirt burn, but doesn't appearly – or maybe ants in it or something, but it doesn't appear that it endangered any people. Well, Your Honor, I understand that the record is not as good as it might be, but there is also just the circumstance of – I doubt that anybody eludes police at 15 miles an hour. Well, we've said that just running – rightly or wrongly, we have said that just eluding the police is not sufficient for a reckless endangerment enhancement. So it's got to be something more than just fleeing the police at an increased speed. Well, and that's where, Your Honor, I – Excuse me. The distinction between eluding a police officer or eluding police officers in something other than a motor vehicle, perhaps, or in an area that is not inhabited, like the country road in Smith, for example, I think that the circumstance of having a – I mean, we can speculate, obviously, as well, that maybe it was a mobile home court that was abandoned or a mobile convenience store. Well, we don't – I mean, we can make certain speculation, but – But, counsel, you said – I'm sorry. This might have been a country road, and it appears that it was. What we don't know is how adjacent it was to the trailer park. We don't know if it was right at the edge of it, do we? Or that it was 100 yards from the trailer park? What was in the area was a trailer park. Apparently, he turned away from it and went off in a different direction. We don't know whether it was right angles or parallel or whatever. I understand that the problem is this occurred back in Michigan, and apparently the government didn't have the ability to get more definitive details from the Michigan Sheriff's Office that was involved, but that's the record we have. And I don't see how on this record – I said – I mean, it was clear that Judge Haddon focused on danger to Woodcock himself, and I gather you are not arguing that the passenger constitutes another person. So it seems to me you've got a couple of big gaps in the record here for us to try and second-guess this. I understand, Your Honor, and certainly a solution in that case would be a remand for more specific findings and another sentencing. We, however, did believe and continue to believe that there is enough in the record. The only issue was whether it was by or through. The Minnesota or the Michigan police had described it as through a trailer park. Mr. Woodcock corrected that and just said he drove by one. The inference there is that we must be awfully close. We're not four miles away. But if the record is vacant in that regard, then the answer would be, indeed, to remand this case for sentencing, and we will make a more appropriate record. Okay. Anything else? Thank you, Your Honor. Well – Hold on. Just a second, Mr. Rostad. Well, I – as you can well understand, none of us can speak for what the Court might do, but there is the possibility that the Court would find some error here and would have to remand the case for the entry of some other judgment than the one that is entered. Now, you're saying that if we find some error, we should remand and give the government another chance to prove what it might learn in the course of a future investigation. That's what you're arguing, is it not? Well, Your Honor, I don't think it's just the government. It's also Judge Haddon. It's his sentence, and I would assume that if the Court feels that he did not make a sufficient record, that he also should get the chance to evaluate the circumstances. Well, maybe we better be specific if it comes to that, if it comes to a remand. Now, I take it that what you're suggesting is that you presented all you had when you had the opportunity, and you're surely not saying that on this remand the Court ought to let you go and make some investigation. And in the event that you find some witness that could tell you that he endangered some other up till now totally unidentified person, that the Court should sentence him accordingly. Now, on the other hand, this Court could take the attitude, well, you made your record, sentence on that record and be done with it. I don't know. But you're saying, do you get to do some more if we remand? Well, Your Honor, I think that if the finding is that Judge Haddon went down the road, that unfortunately we placed him on and focused on Woodcook, that it would be appropriate for him to say, well, if that was incorrect, I should evaluate whether there is enough evidence in the record created for me to make a finding that satisfies this Court, that he was focused not just on Mr. Woodcook, but on the fact that it is a trailer court. I mean, he could make the findings, for example, that trailer courts are occupied, trailer courts have people at risk when people drive by or through them. That is my view, Your Honor. We certainly don't necessarily mean we go back to Michigan and get more information, but I think Judge Haddon may focus on issues in the existing record that are different than the ones now before the Court that would satisfy the Court if he came to the same conclusion that there was enough there. Very well. Anything else? Okay. Thank you. Thank you, Mr. Rosted. Counsel. Just briefly, we believe that the government had its opportunity and focused on the only person that I think logically would be in danger, which was Mr. Woodcook himself, and the note specifically excludes him from that. That is all, Your Honor. All right. Thank you, counsel. The matter just argued will be submitted. And we'll next hear argument in Langley v. Gonzalez.
judges: Leavy, Rymer, Fisher